**UNITED STATES of America, Plaintiff,**

v.

**WESTSIDE BUILDING COMPANY et al., Defendants.**

**Civ. No. 73–1527–AAH.**

United States District Court, C. D. California.

July 3, 1973.

Willard M. Reisz, Los Angeles, Cal., for defendants.

Larry L. Dier, Asst. U. S. Atty., Frank E. Schwelb, Chief, Housing Section, Civ. Rights Div., David T. Kelley, Elyse Goldweber, Attys., Dept. of Justice, Washington, D. C., for plaintiff.

CONSENT DECREE

HAUK, District Judge.

The United States instituted this action as of this date against defendants Westside Building Company and Santa Monica Construction, which are California corporations engaged in the construction and management of apartment buildings in Los Angeles, California, and against defendant Abraham Rothenberg, who is the president of defendants Westside Building Company and Santa Monica Construction, alleging racial discrimination in housing in violation of 42 U.S.C. § 3601 et seq. The Complaint alleges that the defendants own and operate several apartment buildings in the Los Angeles area containing approximately 329 units. The Complaint further alleges that the defendants have refused to rent dwellings and to negotiate for the rental of dwellings because of race and color, have required different terms and conditions with respect to the rental of dwellings because of race,

color and national origin, and have made statements with respect to the rental of dwellings which indicate a preference, limitation and discrimination based on race, color and national origin, and have represented to persons because of race and color that apartments are not available for inspection and rental when such dwellings have in fact been available. The Complaint alleges that the defendants' conduct constitutes a pattern or practice or resistance to the full enjoyment of rights secured by Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601 et seq., and that the denial of equal housing opportunity to a group of persons raises an issue of general public importance.

The defendants deny that they have engaged in any and all of the practices alleged in the Complaint said to constitute a pattern or practice of racial discrimination, and state that they have followed a nondiscriminatory policy. The defendants are, however, prepared to undertake an affirmative program of compliance with the Fair Housing Act. Accordingly, without a trial or an adjudication of this matter on the merits and without an admission on the part of any of the defendants as to the accuracy or truthfulness of any of the allegations of discrimination contained in the Complaint, the plaintiff and the defendants consent to the entry of the following decree:

## I

It is hereby ordered, adjudged and decreed that defendants Westside Building Company, Santa Monica Construction, and Abraham Rothenberg, their employees, agents and successors, and all persons acting in concert or participation with any of them, be and they are hereby permanently enjoined from:

1. Discriminating against any person or group of persons on account of race, color, religion or national origin in any aspect of the sale or rental[1] of dwellings;

2. Denying a dwelling or otherwise making a dwelling unavailable to any person on account of race, color, religion or national origin;

3. Representing to any person on account of race, color, religion or national origin that any dwelling is unavailable for inspection or rental when, in fact, such dwelling is so available;

4. Discriminating against any person in the terms and conditions of the sale or rental of a dwelling, or in the provision of services in connection therewith, on account of race, color, religion or national origin;

5. Failing or refusing to extend the same courtesies and treatment to any person on account of race, color, religion or national origin in the showing and rental of dwellings as are extended to other persons;

6. Making or causing to be made any statement with respect to the sale or rental of a dwelling indicating a limitation, preference or discrimination on account of race, color, religion, or national origin;

7. Interfering with any person on account of race, color, religion or national origin in the exercise or enjoyment of the right to equal housing opportunity;

8. Employing different or more stringent procedures and standards in accepting and processing the application of any person on account of race, color, religion, or national origin than are used in accepting and processing the applications of other persons;

9. Failing to recruit, hire, promote or assign any actual or prospective employee or other person on account of race, color, religion or national origin, or engaging in any discriminatory employment practice within the meaning of 42 U.S.C. § 2000e et seq.

## II

### INSTRUCTIONS TO EMPLOYEES

A. The defendants shall, within 20 days of the entry of this Order, conduct

---

1. The term "any aspect of the sale or rental" includes construction.

an educational program for their rental personnel and other agents and employees to inform them of the provisions of this Order and their duties under the Fair Housing Act. Such program shall include the following:

1. A copy of this Order shall be furnished to each agent and employee.

2. By general meeting or individual conference, the defendants shall inform each agent and employee of the provisions of this Order and of the duties of the defendants and their agents and employees under the Fair Housing Act. Each agent and employee shall also be informed that his failure to comply with the provisions of this Order shall subject him to dismissal or other appropriate disciplinary action.

3. Each agent and employee shall sign a statement that he has read this Order and that he fully understands his responsibilities thereunder.

4. The foregoing program shall be completed within 20 days of the entry of this Order, and thereafter, upon the hiring of any new employee, within five days of the commencement of his duties.

### III

### AFFIRMATIVE STEPS

A. The defendants shall inform the public generally, and their customers and clients specifically, of the defendants' nondiscriminatory policy by the following actions:

1. Each of defendants' application forms and lease agreements shall contain a prominent statement to the effect that apartments will be shown and made available for rental to all persons without regard to race, color, religion or national origin in compliance with the 1968 Fair Housing Act,

42 U.S.C. § 3604. In addition, at the time of application, prospective tenants of the defendants are to be informed of this provision and are to be informed orally or in writing of the defendants' uniform rental application standards and procedures, including financial requirements, credit checks, waiting periods, etc.

2. All advertising in newspapers, on pamphlets, billboards, brochures, handouts, writings of any kind or through any other media, shall include a statement prominently placed and easily understood, indicating that the advertised dwellings are rented and made available without regard to race, color, religion or national origin.[2]

3. The defendants shall replace or modify within one month from the entry of this Consent Decree all current signs indicating the name of the apartment building or indicating apartments for rent, so as to include an appropriate fair housing statement prominently placed and easily legible.

4. The defendants shall give notice within five business days of the first day of each month to appropriate representatives of the nonwhite community of existing and expected vacancies at all of the apartment buildings owned or operated by them. This notice shall be accomplished by regular mail and will include the size and rental price of each available apartment, the name, address, and telephone number of the rental manager to be contacted concerning such vacancy, and any special terms or conditions related to such rental (i. e., no children, no pets, etc.).

The notice to the nonwhite community will be given to Ms. Lois Moss, Executive Director of the Fair Housing Congress of Southern California, 4034 Buckingham Road, Suite 212, Los Angeles,

---

2. The parties have agreed that the phrase "Equal Housing Opportunity" may be used to fulfill this requirement in all advertisements of four lines or less exclusive of the "Equal Opportunity Housing" phrase. In advertisements of greater length both the phrase "Equal Housing Opportunity" and the HUD Equal Opportunity Logotype as set forth in the Advertising Guidelines for Fair Housing, promulgated by the Secretary of Housing and Urban Development, a copy of which is appended hereto as Appendix A, shall be included in the advertisement.

California, 90008, until such time as she is no longer able or willing to receive such notice. At that time the parties shall attempt to agree on the identity of further appropriate representatives of the nonwhite community to receive such notice. If the parties are unable to agree, such representatives shall be designated by the Court.

C. The defendants shall establish and implement uniform, objective and nondiscriminatory standards and procedures for the processing, evaluation and approval of applications, which shall insure that prospective tenants are accorded an informed choice of apartments at all of defendants' buildings. These standards and procedures shall not be more onerous or stringent than those heretofore applied to white applicants.[3]

If after the adoption and approval of objective standards and procedures, the defendants desire to alter them, they may do so, provided that any changes are objective, in writing, and nonracial in purpose and effect. Such proposed changes shall be filed with the Court, with copies to plaintiff, and any dispute arising from such proposed change may be raised by either party in any subsequent appropriate proceeding in this Court.

## IV

It is further ordered that the defendants shall for a period of two years from the entry of this Order make, keep and preserve the following records for all of the apartment complexes which they own and/or operate:

(a) The name, address and race of each person inquiring in person about the availability or terms of rental of an apartment therein, the date, and whether:

1. He was offered an application.
2. He filled out an application.
3. He submitted an application.
4. He made a deposit.
5. He was accepted for waiting list.
6. His application was approved and he was accepted for occupancy.
7. His application was rejected, and, *if so, the reasons therefor.*[4]

(b) The number of apartments available on each of the above dates, the type of apartments (i. e., one bedroom, two bedroom, etc.) available, the type of apartment requested by each person, and all vacancy and other information required to be reported to the Court under the reporting provisions of this Order.

## V

### REPORTING

Ninety days after the entry of this Order, and at three-month intervals thereafter for a period of two years, the defendants shall file with this Court, and serve on counsel for the plaintiff, a report containing the following information for each apartment they own and/or operate:

(a) The name, address and race of each person making inquiry about the availability or terms of rental of an apartment during the preceding three-month period, and whether such person:

1. Made inquiry.
2. Was offered an application.
3. Filled out an application.
4. Submitted an application.
5. Had their application forwarded to a central office.
6. Made a deposit.
7. Were accepted for the waiting list.
8. Were accepted for occupancy.
9. Were rejected, and if rejected, the reasons therefor.

---

3. A copy of the objective and nondiscriminatory standards now in use by the defendants is appended hereto as Appendix B.

4. See Appendix C which is a form containing the above information that the parties have agreed upon to use to fulfill the reporting requirements.

The defendants shall supply with each such report copies of all applications taken during the preceding reporting period. The defendants shall further report with respect to each vacancy at each apartment complex owned or operated by them during the reporting period,

(a) The building and the apartment number;

(b) The date notification was received that the apartment would become available for rent;

(c) The date the apartment became available for rent;

(d) The date the apartment was no longer available for rent;

(e) The date that the apartment was leased to a new tenant and the name and race of the new tenant or tenants.

Additionally, for each apartment complex owned or operated by the defendants, they shall include in the first report the number of persons or families, by race who are residing there at the time of the entry of this Order.[5]

## VI

### TRANSFER OR ACQUISITION OF PROPERTY

In the event that the defendants or any of them acquire any other apartment building or other residential property subsequent to the entry of this Order, they shall furnish plaintiff's counsel with the location and name (if there is one) of such property and the racial composition of the property by unit within 30 days from the effective date of purchase. Further if the defendants accept an offer to purchase or make an offer to sell or otherwise transfer any apartment building or other residential property owned or operated by any of them after the entry of this Decree, they shall furnish plaintiff's counsel with the location of the property and the name and address of the prospective purchaser. Such notification shall be provided within three business days from the acceptance of an offer to purchase or the making of an offer to sell. If the plaintiff believes that it is necessary to contact the prospective purchaser of the property to bring to his attention the existence of this Consent Decree and the obligations that he might incur hereunder the plaintiff shall not notify the purchaser but shall notify the defendants who shall have five (5) days to respond in writing to the plaintiff's request. Should the defendants agree to the plaintiff's request to bring this information to the attention of the prospective purchaser, a meeting will be set up within five (5) days at a mutually convenient time with all parties (including the prospective purchaser) present to discuss this Consent Decree. Should there be any disagreement as to whether the existence of this Consent Decree should be brought to the attention of the future purchaser prior to his purchase of the property either party may apply to the Court for a resolution of the dispute upon written notification to the other party.

The first report to be filed hereunder shall describe the preliminary affirmative steps the defendants have taken to implement the provisions of this Order. The report shall include, among the other things set forth in Part III, sample copies of all advertising used by the defendants, copies or descriptions of all signs posted in accordance with this Order, apartment vacancy reports, and written documentation to the effect that each agent or employee has received a copy of this Order and has been advised of its terms.

It is further ordered that:

1. The defendants' keeping of racial records for the purpose of complying with this Decree shall not be considered discriminatory.

5. This information should set out the number of units occupied by persons of each race.

2. Representatives of the United States shall be permitted to inspect and copy all pertinent records of the defendants at any and all reasonable times, provided, however, that the United States shall endeavor to minimize any inconvenience to the defendants caused by the inspection of such records.

3. Each party to this Decree shall bear its own costs.

It is further ordered that the defendants may move to dissolve this permanent injunction at any time after two years from the entry of this Consent Decree. If the United States does not object within thirty (30) days, the injunction shall be dissolved and the Complaints dismissed without a hearing or further order of the court.

The Court shall retain jurisdiction of this action for all purposes.

37 F.R. 6700
4/1/72

APPENDIX A

# DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

**Office of Assistant Secretary for Equal Opportunity**

[Docket No. R-72-106]

## ADVERTISING GUIDELINES FOR FAIR HOUSING

### Notice of Statement of Policy

In order to facilitate and promote compliance with the requirements of Title VIII of the Civil Rights Act of 1968, and particularly section 804(c) thereof (42 U.S.C. 3601, 3604(c)) regarding notices, statements or advertisements, the Department of Housing and Urban Development has prepared guidelines to indicate graphic and written references that are appropriate for the preparation, publication, and general use of advertising matter with respect to the sale or rental of a dwelling as defined by the Act.

Notice of a proposed statement of policy was published in the FEDERAL REGISTER on May 21, 1971 (36 F.R. 9266). Comments were received from 26 interested persons and organizations and consideration has been given to each comment.

Several comments observed that the proposed policy statement was at times unnecessarily limited to the field of newspaper advertising. In response to the comments, the policy statement has been revised in several places to clarify that the guidelines apply to advertisements in all media, including, e.g., television and radio, as well as to advertising agencies and other persons who use advertising.

Several organizations suggested additional catchwords connoting a discriminatory effect for inclusion in section A-3. That section has been expanded to include several additional terms which may have a discriminatory effect when used in a discriminatory context.

In response to other comments, section A-6 has been revised to clarify how directional references could be employed in a discriminatory context with an ethnically, as well as a racially, discriminatory effect. Also, section A-7 has been added relating specifically to designation of religious, ethnic or racial facilities to identify an area or neighborhood.

A number of comments indicated that human models or Equal Opportunity advertisements can and have been used selectively to promote the development of racially exclusive communities. A new section C-4 has been added in order to meet this specific problem. The previous human models section has been clarified by revision and reorganization in the new section C, in light of comments which indicated confusion or uncertainty surrounding the use of human models.

In response to publishers' comments, Table I has been simplified and references to minimum type sizes limited to a recommendation that the type should be bold display face and no smaller than eight points.

A number of organizations suggested the inclusion of a publisher's notice to appear with real estate advertising. A suggested notice has been included as Table III, in lieu of the provision in the proposed guidelines for direct notification to all firms or persons using the advertising services of a publisher. This provision was removed in light of objections that such notification would be unworkable or would impose great hardship since a large volume of real estate advertising is placed by a great number of persons on a nonrecurring basis.

Finally, a number of minor editorial or organizational changes have been made in order to clarify or simplify the advertising guidelines.

Several organizations suggested that the guidelines make specific reference to the roles of other enforcement agencies, including the Department of Justice and local agencies. These comments suggested that the guidelines specify that they do not alter or affect conciliation agreements or court orders obtained by these agencies, as well as by the Department. Such a disclaimer appears to be unnecessary, since there is nothing in the guidelines to indicate an intent to alter or affect agreements or orders obtained by the Department and other agencies.

This document is issued pursuant to section 7(d), Department of Housing and Urban Development Act, 42 U.S.C. 3535(d).

The statement of Policy reads as follows:

PUBLICATION GUIDELINES FOR COMPLIANCE WITH TITLE VIII OF THE CIVIL RIGHTS ACT OF 1968

POLICY STATEMENT

Section 804(c) of title VIII of the Civil Rights Act of 1968, 42 U.S.C. 3604(c), makes it unlawful to make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling (any building, structure, or portion thereof which is occupied as, or designed or intended for occupancy as, a residence by one or more families, and any vacant land which is offered for sale or lease for the construction or location thereof of any such building, structure, or portion thereof) that indicates any preference, limitation, or discrimination based on race, color, religion, or national origin, or an intention to make any such preference, limitation or discrimination.

These advertising guidelines are being issued for the purpose of assisting all advertising media, advertising agencies, and all other persons who use advertising to make, print, or publish or cause to be made, printed, or published any classified or display advertisement with respect to the sale or rental of a dwelling by the owner or his agent, in compliance with the requirements of title VIII.

Conformance with these guidelines will be considered in evaluating compliance with title VIII in connection with investigations by the Assistant Secretary of advertising practices and policies under the title.

A. *The use of words, phrases, sentences and visual aids which have a discriminatory effect.* The following words, phrases, symbols, and forms typify those most often used in residential real estate advertising to convey either overt or tacit discriminatory intent. Their use should therefore be avoided in order to eliminate their discriminatory effect. In considering a complaint under title VIII, the Assistant Secretary will normally consider the use of these and comparable words, phrases, symbols, and forms to indicate possible violation of the title and to establish a need for seeking resolution of the complaint, if it is apparent from the context of the usage that discrimination within the meaning of the Title is likely to result.

1. *Words descriptive of dwelling, landlord, and tenant.* White private home, Colored home, Jewish home.

2. *Words indicative of race, color, religion, or national origin.* Negro, Hispano, Mexican, Indian, Oriental, Black, White, WASP, Hebrew, Irish, Italian, European, etc.

3. *Catch words.* Restricted, ghetto, disadvantaged. Also, words such as private, integrated, traditional, "board approval" or "membership approved" if used in a discriminatory context.

4. *Symbols or logotypes.* Symbols or logotypes which imply or suggest race, color, religion, or national origin.

5. *Colloquialisms.* Locally accepted words or phrases which imply or suggest race, color, religion, or national origin.

6. *Directions to the real estate for sale or rent (use of maps or written instructions).* References to real estate location made in terms of racially or ethnically significant landmarks such as an existing Black development (signal to Blacks) or an existing development known for its exclusion of minorities (signal to Whites). Specific directions given from a racially or ethnically significant area.

7. *Area (location) description.* Use of religious, ethnic, or racial facilities to describe an area, neighborhood, or location.

B. *Selective use of advertising media or content with discriminatory effect.* The selective use of advertising in various media and with respect to various housing developments or sites can lead to discriminatory results and may indicate a violation of title VIII.

1. *Selective geographic impact.* Such selective use may involve the strategic placement of billboards, brochure advertisements distributed within a limited geographic area by hand or in the mail, or advertising in particular geographic coverage editions of major metropolitan newspapers, or in local newspapers which are mainly advertising vehicles for reaching a particular segment of the community, or in displays or announcements only in selected sales offices.

2. *Selective use of equal opportunity slogan or logo.* Such selective use may involve using the equal opportunity slogan or logo in advertising reaching some geographic areas, but not others, or with respect to some properties but not others.

3. *Selective use of human models.* Such selective advertising may also involve the use of human models primarily in media that cater to one racial or ethnic segment of the population that is not balanced by a com-

plementary advertising campaign that is directed at other groups, or the use by a developer of racially mixed models to advertise one of the developments and not others.

C. *Policy and practices guidelines.* The following guidelines are offered as suggested methods of assuring equal opportunity in real estate advertising:

1. *Guidelines for use of logotype, statement, or slogan.* All advertising of residential real estate for sale or rent can contain an Equal Housing Opportunity logotype, statement or slogan as a means of educating the homeseeking public that the property is available to all persons regardless of race, color, religion, or national origin. Table 1 (see appendix) indicates suggested sizes for the use of the logotype. In all space advertising which is less than 4 column inches of a page in size, the Equal Housing Opportunity slogan should be used. The advertisement may be grouped with other advertisements under a caption which states that the housing is available to all without regard to race, color, religion, or national origin. Alternatively, 3–5 percent of the advertisement copy may be devoted to a statement of the equal housing opportunity policy of the owner or agent. Table 2 (see appendix) contains copies of the suggested Equal Housing Opportunity logotype, statement and slogan.

2. *Guidelines for use of human models.* Human models in photographs, drawings, or other graphic techniques may be used to indicate racial inclusiveness. If models are used in display advertising campaigns, the models should be clearly definable as reasonably representing both majority and minority groups in the metropolitan area. Models, if used, should indicate to the general public that the housing is open to all without regard to race, color, religion, or national origin, and is not for the exclusive use of one such group.

3. *Guidelines for notification of Fair Housing Policy.* (a) *Employees.* All publishers of advertisements, advertising agencies, and firms engaged in the sale or rental of real estate should provide a printed copy of their nondiscriminatory policy to each employee and officer.

(b) *Clients.* All publishers of advertisements and advertising agencies should post a copy of their nondiscrimination policy in a conspicuous place wherever persons come to place advertising and should have copies available for all firms and persons using their advertising services.

(c) *Publisher's notice.* All publishers are encouraged to publish at the beginning of the real estate advertising section a notice such as that appearing in Table 3 (see appendix).

*Effective date.* This statement of policy shall be effective May 1, 1972.

SAMUEL J. SIMMONS,
*Assistant Secretary
for Equal Opportunity.*

**APPENDIX**

The following three tables may serve as a guide for the use of the Equal Housing Opportunity logotype, statement, slogan, and publisher's notice for display advertising:

**TABLE I**

A simple formula can guide the real estate advertiser in using the Equal Housing Opportunity logotype, statement, or slogan. If other logotypes are used in the advertisement, then the Equal Housing Opportunity logotype should be of a size equal to the largest of the other logotypes; if no other logotypes are used, then the following guidelines can be used. In all instances, the type should be bold display face and no smaller than 8 points.

| Approximate size of advertisement | Size of Logotype in inches |
|---|---|
| ½ page or larger | 2 x 2. |
| ⅛ page up to ½ page | 1 x 1. |
| 4 column inches to ⅛ page | ½ x ½. |
| Less than 4 column inches | (¹). |

¹ Do not use.

**TABLE II.—ILLUSTRATIONS OF LOGOTYPE, STATEMENT, AND SLOGAN**

Equal Housing Opportunity logotype.

**EQUAL HOUSING OPPORTUNITY**

Equal Housing Opportunity statement:
We are pledged to the letter and spirit of U.S. policy for the achievement of equal housing opportunity throughout the Nation. We encourage and support an affirmative advertising and marketing program in which there are no barriers to obtaining housing because of race, color, religion or national origin.

Equal Housing Opportunity slogan:
"Equal Housing Opportunity."

**TABLE III—ILLUSTRATION OF PUBLISHER'S NOTICE**

Publisher's notice:
All real estate advertised in this newspaper is subject to the Federal Fair Housing Act of 1968 which makes it illegal to advertise "any preference, limitation, or discrimination based on race, color, religion, or national origin, or an intention to make any such preference, limitation, or discrimination."
This newspaper will not knowingly accept any advertising for real estate which is in violation of the law. Our readers are hereby informed that all dwellings advertised in this newspaper are available on an equal opportunity basis.

[FR Doc.72-4983 Filed 3-31-72;8:45 am]

## UNIFORM OBJECTIVE AND NON–DISCRIMINATORY STANDARDS

UNIFORM OBJECTIVE AND NON-DISCRIMINATORY STANDARDS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) |
| WESTSIDE BUILDING COMPANY, | ) |
| SANTA MONICA CONSTRUCTION | ) |
| and ABRAHAM ROTHENBERG, | ) |
| | ) |
| Defendants. | ) |

1. All applicants must complete a standard rental application form containing the information set forth in the "Application To Rent" a copy of which is attached hereto.

2. Each applicant must submit evidence of a monthly income of not less than twice the rental value of the apartment proposed to be owned.

3. Each applicant must be of good moral character and in order to verify such moral character, applicant must complete all information on the attached Application to Rent.

4. Each application will be reviewed either by the apartment manager at the specific apartment house or by an officer of the corporate owner of such apartment house within four business days after submission of the application by the applicant. Unless within that period of time notice is forwarded to the applicant that such application is not acceptable the application shall be deemed accepted.

5. Each applicant will be required to pay the first and last month's rent at the time of executing the lease for the apartment in question.

6. Applications will be rejected without regard to the preceding clauses if applicant has children and/or pets and such application is for an apartment in an apartment house in which children and/or pets are uniformly not accepted.

000000000000000

Name _____   _____   _____  SOCIAL SECURITY NUMBER

Present Address _____

City_____ State _____ Zip Code No. _____

RELATIONSHIP OF APPLICANT_____ Single Person_____ Husband and Wife_____ Number of Persons in Family Group _____

Names of Adults_____

Names and Ages of Children_____  Pets: |No |Yes

NO OTHER PERSONS TO RESIDE AT ANY TIME WITHOUT THE CONSENT OF MANAGER IN WRITING

I (we) hereby agree that no other person or persons except the above named will occupy the demised premises at any time without the consent of the manager in writing.

Reason for vacating present place of residence_____

Length of Residence in City _____ Give following information as to your last three (3) places of residence:

| PRESENT ADDRESS | LANDLORD | ADDRESS | PHONE | TERM OF OCCUPANCY |
|---|---|---|---|---|
| LAST PREVIOUS | | | | |
| OTHER | | | | |

I hereby agree that all adults residing in the Apartment are Jointly - Severally liable for all rent and damage incurred during term of occupancy.

Name of Person to notify in an emergency _____

NAME            RELATIONSHIP

_____

ADDRESS            TELEPHONE

Business or Occupation_____ What Capacity_____ How long employed _____

Employed By:_____

ADDRESS      PHONE      NAME OF IMMEDIATE SUPERIOR

Present:_____

Last Previous:_____

Others:_____

| Charge Accounts: | | | | | |
| NAME | ACCOUNT NO. | ADDRESS | PHONE | OPEN | CLOSED |
| | | | | | |
| | | | | | |
| | | | | | |

Automobile Make_____ Model _____ Year _____ Drivers License _____ License No. _____

Amount of Loan _____

NAME OF COMPANY HOLDING LOAN    LOAN NUMBER    ADDRESS    PHONE

Are you presently receiving Welfare Unemployment Insurance? Yes_____ No._____

Have you in the past two (2) years received Welfare or Unemployment Insurance?_____

Name of Bank _____ Commercial _____ Savings _____

ACCOUNT NUMBER     ACCOUNT NUMBER

Branch_____ Address_____

Savings & Loan Association - Name_____ Address _____

ACCOUNT NUMBER

Applicant represents that statements above made are true and correct and hereby authorizes verification of references given.

The undersigned upon the basis of the above statement makes application to rent housing accommodations designated as Apartment Number

Located at _____ The rental of which is $_____ per _____ and upon approval by the owner of this application agrees to sign rent or lease agreement in the form hereto attached.

Deposit for said Apartment subject to refund, less any cost incurred, in the event said application is not approved.

Date:_____ 19____

**EQUAL HOUSING OPPORTUNITY**

(Signature) _____

APPLICANT

Time:_____

(Signature) _____

APPLICANT

Form No. 26, Copyright 1964, Apartment Association of Los Angeles County, Inc., 551 So. Oxford Ave., Los Angeles, Calif. 90005, Phone 304-4131

## APPENDIX C

## FAIR HOUSING INFORMATION

The federal government requires us to obtain this information under the Fair Housing Act.

_____

Apartment Name or Address

_____

Name

_____

Address

_____

Office Telephone      Home Telephone

_____

Race      Number of Adults      Number of Children

_____

Date      Time

2157

Type of Apt:   Studio – Bedroom    1   2   3

---
Price Range            ---Furnished---            ---Unfurnished---

---
Apartments Shown        ---Rental Price---

---
Offered an Application        ---Filled Out an Application---

---
Submitted an Application      Made a Deposit

---
Accepted For Waiting List

Referred to Vacancies in other buildings    YES_____    NO_____

For Manager's Use:

---
Application Accepted           ---Application Rejected---

Reasons For Rejection:

---
Apartments Available

Manager's Signature _____